(164 App. Div. 462)

FIORANZA v. RINEHART & DENNIS CO.

(Supreme Court, Appellate Division, Second Department. November 13, 1914.)

1. MASTER AND SERVANT (§ 152*)—DEATH OF SERVANT—LIABILITY.
    Where an employé accepted the dangerous position of powderman under the representation of capacity and with some experience, his representative, suing for his death by an explosion, could not maintain the action on the theory that the employé was negligently left uninstructed in the use of an appliance used in the work.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 313; Dec. Dig. § 152.*]

2. MASTER AND SERVANT (§ 241*)—DEATH OF SERVANT—LIABILITY.
    An employé, who accepted the dangerous position of powderman on his representation of capacity and with some experience, and who had control of laborers at work, was chargeable with the duty of stopping a dangerous use by the laborers of a pole in easing down a blast, when he had full opportunity to observe the handling of the pole before an explosion caused by improper handling.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 757; Dec. Dig. § 241.*]

Appeal from Trial Term, Westchester County.

Action by Berardina Fioranza, administratrix of Antonio Fioranza, deceased, against the Rinehart & Dennis Company. From a judg-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment for plaintiff, and from an order denying a motion for new trial defendant appeals. Reversed, and new trial granted.

Argued before. JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

James J. Mahoney, of New York City (F. Wright Moxley, of New York City, on the brief), for appellant.

Humphrey J. Lynch, of White Plains, for respondent.

THOMAS, J. [1] The testimony of Bolton, the superintendent, is to the effect that Fioranza recommended that he was competent to act as powderman, and that he did act for some months as such, and that he was superior to De Guilio. Two of the three fellow servants testified that they had seen him engaged in deep hole blasting on some occasions, although they seek to make them exceptional. At least, after De Guilio left, Fioranza four days before the accident became the powderman, and thereby accepted a dangerous position with implied representation of capacity, certainly with some experience, and, as Bolton says, without explicit contradiction, Fioranza recommended himself. Under such circumstances, the representative of Fioranza cannot be heard to charge that he was negligently left uninstructed in the use of the pole.

[2] If the pole was dangerously used in Fioranza's presence, he, as the head of the laborers at the immediate work, should have stopped it, as he had full opportunity before the explosion of observing the handling of the pole. The record does not show that the pole was rammed or jammed against the powder, as the exhibitions of the witnesses are not described. Nor does it appear that such use of the pole as was made had in the past been found to be dangerous. Brown, for the plaintiff, said that the dynamite is liable to stick, and that in such case "we try to ease it down past this stone," and that he would not ram it. The record does not show that the men did ram the powder. Kincaid said that he had not sprung horizontal holes, or seen it done, although he had heard of it, while Brown said that it was not customary. But on the great work in question it was customary to spring horizontal holes and blow them, and there is no evidence that there or elsewhere explosions had shown that the practice was dangerous to follow. If the master furnished Fioranza incompetent men, and they, without his negligent failure to supervise them, or to correct dangerous and negligent methods of handling the pole, caused the injury, another question would arise. But that was not the theory of the submission.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.