NEW YORK CENT. & H. R. R. CO. v. SALKAUKUS.

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

No. 39.

1. MASTER AND SERVANT ☞203(3)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Employés engaged in unloading car wheels from a railroad car do not, where the wheels were not loaded in accordance with the established practice, assume the risk of injury as an ordinary risk of the business.

[Ed. Note.—For other cases, see Master and Servent, Cent. Dig. § 543; Dec. Dig. ☞203(3).]

2. MASTER AND SERVANT ☞217(25)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A servant assumes extraordinary risks which are obvious and the danger of which he appreciates.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 593, 594, 598; Dec. Dig. ☞217(25).]

3. MASTER AND SERVANT ☞288(6)—INJURIES TO SERVANT—ASSUMPTION OF RISK—JURY QUESTION.

Though a railroad employé, unloading from a railroad car wheels which were not piled in the usual way, noticed that the wheels were in an upright position, such employé will not, as a matter of law, be deemed to have assumed the risk that they might fall, where he testified he did not appreciate the danger and the question is properly left to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010, 1021; Dec. Dig. ☞288(6).]

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

Action by Peter Salkaukus against the New York Central & Hudson River Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

A. S. Lyman, of New York City, for plaintiff in error.

B. S. Yankaus, of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. The plaintiff brought this action at common law against his master to recover for personal injuries on the ground

that the master did not use ordinary care to give him a safe place in which to work.

[1-3] A manufacturer of car wheels at Albany, N. Y., loaded an open car with wheels, which subsequently arrived at the defendant's yard at Mott Haven, New York City. The practice in loading is to lay down wheels three deep flat on the floor in three piles across one end of the car, and then to stand up the rest of the wheels on their edges in three rows lengthwise of the car but slanting toward the flat wheels. This obviously gives a position of stability. The wheels weigh from 625 to 675 pounds each. When the car arrived at the yard at Mott Haven, it stood north and south, and the unloading began at the south end, where some of the wheels had fallen down. These were removed, and then the plaintiff with his mate began to move the wheels that were standing up. The practice in unloading is for one man to put a stick into the axle hole and hold the wheel up while his mate rolls it to the end of the car, where it is lifted out by a hoist. When the plaintiff and his mate had moved about 20 wheels and one-third of the car was clear, the plaintiff put his stick into the axle hole of the outside wheel in the center row, and his mate rolled it some two or three feet the plaintiff holding the stick and turning with the wheel toward the south end of the car. At this moment six of the outside wheels on the westerly row fell forward, one of which struck and injured the plaintiff's left foot. The wheels were standing upright, and, as the result showed, in a dangerous position. Considering their weight, it can hardly be assumed that they were jolted into this position on their journey. The fair supposition is that they were improperly loaded by the shipper. This, however, makes no difference, because it is quite clear that they made the place unsafe to work in. There is no evidence that the plaintiff or his mate did anything to contribute to the fall of the wheels, so that the only question is, Did he assume the risk? As the loading was not in accordance with the established practice, the risk was not assumed by the plaintiff as an ordinary risk of the business. But the servant also assumes extraordinary risks which are obvious and the danger of which he appreciates. The plaintiff admitted that he saw these wheels were standing upright, but said that he did not appreciate the danger. Though the question whether he was not bound to do so was a very close one, Judge Veeder declined to decide it as matter of law, and submitted it to the jury. We are not disposed to differ with him.

The judgment is affirmed.


HOUGH, Circuit Judge (dissenting). With the statement of facts contained in the opinion of the court I entirely agree.

The rule of law was stated by this court in New York, etc., R. R. v. Vizvari, 210 Fed. 127, 126 C. C. A. 632, L. R. A. 1915C, 9, that, "where the facts are clearly established and the conclusion to be drawn from the facts is a matter which cannot reasonably be the subject of any doubt," the question is for the court. The further statement on the same page that it is radically unsound to view as one of law a claim of negligence on undisputed facts must be regarded as obiter. Thus in

many litigations it is for the court to fix the standard of reason. This court has often done so; compare Lindsay v. New York, etc., Co., 112 Fed. 384, 50 C. C. A. 298; Terry v. Schmidt, 116 Fed. 627, 54 C. C. A. 83; Brown v. Hitritz, 192 Fed. 528, 113 C. C. A. 84, with the Vizvari Case, and the present opinion.

To say, in effect, that a man does not assume the risk of a danger simple, obvious, known to him, and revealed by his own labors is not, in my judgment, reasonable. Therefore I dissent.